JOHN J. SHAEFFER (SBN 138331)
jshaeffer@foxrothschild.com
Meeghan H. Tirtasaputra (SBN 325572)
mtirtasaputra@foxrothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone: 310-598-4150
Facsimile: 310-556-9828

Attorneys for Plaintiff
STARQUEST VENTURES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STARQUEST VENTURES, INC. dba Stelo, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEXCOM, INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR**<br>**1. FEDERAL TRADEMARK INFRINGEMENT (35 U.S.C. § 1114)**<br>**2. STATUTORY TRADEMARK INFRINGEMENT (*Bus & Pro. Code* §§ 14245)**<br>**3. COMON LAW TRADEMARK INFRINGMENT**<br>**4. NEGLIGENCE**<br>**5. UNFAIR COMPETITION (*Bus & Pro. Code* §§ 17200)**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT**

Plaintiff StarQuest Ventures, Inc., which does business as Stelo ("Stelo"), alleges as follows:

## INTRODUCTION

1. "I purchased [your] … glucose sensor in October of 2024….[My wife] started using it and after using it for about 8 days or so the sensor came apart. It came out of the arm that my wife was using it for. I think it broke off and, I think where there is a needle or whatever is still embedded in the, inside her. I was wondering what we need to do and what the procedure is ….." This is just one of thousands of post-sale inquiries Stelo, a northern California software company, has received on its customer support line since Defendant Dexcom, Inc. ("Dexcom") launched its hands-free glucose monitoring system branded as "Stelo."

2. Stelo admittedly does not directly compete with Dexcom in the glucose monitoring market. One may question whether consumers are confusing Stelo as the source or sponsor of Dexcom's glucose monitoring system. For these reasons, Dexcom scoffed when Stelo notified Dexcom of the tremendous post-sale, reverse confusion Stelo support had received, contending that such confusion is simply not relevant. While Dexcom may not care, its customers, the market, and Stelo – who's registered "Stelo" mark now lies in ruins – do.

3. Far from an oversight, Dexcom knew of Stelo's registration when it sought to register its own "Stelo" mark in the classes of software and medical devices. On July 2, 2024, the examiner of Dexcom's federal trademark application issued an office action refusing Dexcom's registration request for the software class because Stelo already held a registration in the same class. Undeterred, Dexcom went forward anyway, launching its Stelo glucose monitoring system a month late, in August 2024. Dexcom may consider the examiner's conclusions naïve or wrongheaded. Dexcom, however, has now willfully and knowing assumed the risk that it may be wrong.

4. Dexcom may have a point that the confusion inundating Stelo results from Dexcom's own inept customer support – with customers voicing their

dissatisfaction with Dexcom "chatbot" tool – or, as report by Dexcom customers, that Dexcom itself provided Stelo's support number to its customers. Neither excuse, however, absolves Dexcom from destroying the goodwill Stelo built in its mark.

5. This Country restrains the most insidious forms of competition with laws that we as its citizens believe are in the best interest of our economy. The Lanham Act and its state and common law counterparts reject the notion that bigger companies like Dexcom can ignore a senior user's rights simply because they do not believe their offering directly competes with the senior user. It is for the Court and not Dexcom to decide whether our social norms as embodied in the Lanham Act should excuse the confusion suffered by Dexcom's customers, its future customers, and Stelo until such time as Dexcom's shadow finally blocks completely any light associating Stelo with anyone other than Dexcom. Such bare knuckles competition is not the foundation of this Country. Like in sport, business competition thrives, to consumer's benefit, when there are rule to the game, competitors conform to the rules, and sanctions are metered out against those who break the rules. These laws level the playing field to ensure robust and productive competition. Dexcom's actions here are deserving of swift, clear, and deterring sanction.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over Stelo's federal trademark claim that arise under the Lanham Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq*. pursuant to 28 U.S.C. §§ 1332, 1338(a) and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over Stelo's California statutory and common law claims pursuant to 28 U.S.C. § 1367 because they each arise out of the same nucleus of operative facts.

7. This Court has personal jurisdiction over Dexcom because Stelo is informed and believes, and on that basis alleges, that Dexcom's principal place of business is within the State of California and that Dexcom has advertised and sold it glucose monitoring system under the Stelo mark within the State of California.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) & (c) because Dexcom is subject to this Court's personal jurisdiction with respect to the civil action in question.

## PARTIES

9. Stelo is a privately held corporation registered in California with its headquarters in San Francisco, California. For the past 25 years, Stelo, a software company, has been in the business of creating, deploying, and supporting flexible, resilient solutions for delivering unlimited, near real-time data syncing and replication to enable connected ecosystems. Until 2023, Stelo did business as StarQuest.

10. Stelo is informed and believes, and on that basis alleges, that Dexcom is a public traded corporation incorporated in Delaware with its principal place of business in San Diego, California. Dexcom is medical device company primarily focused on the design, development, and commercialization of continuous glucose monitoring systems for the management of diabetes and metabolic health by patients. Dexcom commercialized its first product in 2006.

11. Stelo is informed and believes, and on that basis alleges, that, at all relevant times, the defendants sued herein as Does 1 through 10, inclusive, and each of them, aided, were affiliated with, and/or were agents of, Dexcom and are in some way responsible for the acts and events complained of herein and proximately caused the injuries to, and damages suffered by, Stelo that are described in this complaint. The true names and capacities of the persons named herein as Does 1 through 10 are presently unknown to Stelo, and, therefore, Stelo sues said persons by such fictious names. Stelo will seek leave to amend this complaint to show the true names and capacity of these Doe defendants when their identities have been ascertained, or according to proof at trial.

///

///

# FACTS COMMON TO ALL CAUSES OF ACTION

**STELO**

12.   Stelo has provided its customers with software solutions for the past 25 years across the economy, including to the healthcare and pharmaceutical industries. Stelo products include not only data replication solutions but also data connectivity solutions that allow different devices to connect and speak to each other. Stelo prides itself on exceptional customer support. Prior to August 2024, Stelo's call center would receive about two dozen calls a month and less than a dozen support calls. While the monthly requests may be few, many are critical and demand immediate attention to avoid damage to a customer's business.

13.   In late 2021, Stelo concluded that the StarQuest name it has operated under for the prior twenty years, was less distinctive due to its common use across industries, and the company decided to rebrand to the more distinctive Stelo name. To that end, in January 2022, Stelo filed an intent to use application United States Patent and Trademark Office ("USPTO"), seeking registration of the Stelo mark in International Class 009 for computer software, namely, downloadable computer software in the field of data replication and software maintenance and instillation. The trademark application published in the Official Gazette on November 29, 2022.

14.   On January 23, 2023, Stelo received a notice of allowance of its registration from the USPTO. On July 17, 2023, Stelo provided the USPTO with a statemen of use reflecting that it had begun use of the Stelo mark in commence as early as October 4, 2022. The Stelo mark received its registration on September 12, 2023, with registration number 7,165,605 without any claim to any font, style, size, or color ("the '605 Registration"). Concomitant with its pursuit of a federal registration, Stelo pursued registrations around the world.

15.   In addition to pursuing its federal registration, Stelo incurred substantial time and expense in rebranding itself from StarQuest to Stelo. Upon completion, and prior to August 2024, management of Stelo considered their rebranding effort a

success and a worthwhile investment. Stelo's current business plan looks to expand its business channels to include online marketplaces like Amazon as well as to deploying more consumer-focused products, including applications that can be run from a user's phone.

**DEXCOM**

16. Stelo is informed and believes, and on that basis alleges, that over the past 10 years Dexcom revenues have increased from approximately $250 million in 2014 to more than $4 billion in 2024, serving more than 2.8 million customers worldwide. Dexcom received approval of from the Food and Drug Administration ("FDA") to commercialize its first prescription-based glucose monitoring system in 2006. In 2018, Decom obtained market authorization from the FDA for its G6 product, which was the first of its type glucose monitoring system permitted by the FDA to be used as part of an integrated system. Such a system may include automated insulin delivery that delivers insulin to patients suffering from diabetes as needed and as indicated by their glucose monitoring system. Stelo is informed and believes, and on that basis alleges, that Dexcom markets the value of its system as eliminating the need for finger pricks and providing continuous glucose reading wirelessly sent to either a Dexcom device or to a generic mobile device through a software application, Dexcom Share. Thereafter, in December 2022, Dexcom received market authorization from the FDA for an improve prescription glucose monitoring system that it branded as the Dexcom G7.

17. Stelo is informed and believe, and on that basis alleges, that sometime after 2020, Dexcom decided to expand its market reach to include not only patients with a diabetes diagnosis but also patients with pre-diabetes, believing that such customers would be interested in a continuous glucose monitoring as well. Dexcom wanted to be the first to sell such a monitoring system directly to consumers without a prescription, *i.e.* over the counter. To this end, on December 22, 2023, filed for premarket approval of its Stelo Glucose Biosensor System based on its substantial

equivalence to the Dexcom G7, which had already received FDA approval. Dexcom received such approval from the FDA in a letter dated May 5, 2024, making Dexcom Stelo system the first FDA approved over-the-counter continuous glucose monitoring system.

18. Before Dexcom sought pre-market approval from the FDA, Stelo is informed and believes, and on that basis alleges, that Dexcom had already decided based on its market research to sell its over-the-counter glucose monitoring system under the brand name Stelo. To this end, on November 20, 2023, Dexcom caused to be filed with the USPTO a trademark application for Stelo with standard characters and based on an intent to use. Significantly, Dexcom sought registration in both International Class 9 for downloadable and recorded software and computer hardware for use in the acquisition, capture, processing, presentation, storage, and transmission of medical and physiological data, as well as International Class 10 for medical sensors that are implanted or inserted into the human body used to continuously monitor concentrations of glucose in the human body.

19. One would assume that professionals working on Dexcom's behalf would have encountered Stelo's prior registration in International Class 9 before filing for a registration of the same mark in a same International Class. Even if they did not, on July 2, 2024, Dexcom received from the USPTO an office action letter refusing Dexcom's application with respect to International Class 9 based on Stelo prior registration of the same mark in the same class.

20. After receiving a three-month extension, Dexcom, on December 31, 2024, responded to the office action, disagreeing that a likelihood of confusion would exist with respect to the competing uses of the Stelo mark. Stelo is informed and believes, and on that basis alleges, that thereafter, in January 2025, Dexcom requested that it is still pending application be divided so that review can separately proceed as to each International Class. The USPTO granted that request on May 22, 2025, and, as of the date of the filing of this complaint, no further action has been taken by the

1  USPTO with respect to either of Dexcom's applications and nether has yet published
2  for opposition.

3      21.    Despite the USPTO finding of a likelihood of confusion and the
4  inconclusive nature of its pending applications, Stelo is informed and believes, and
5  on that basis alleges, that Dexcom proceeded to launch its over-the-counter glucose
6  monitor under the Stelo name in August 2024, with robust marketing support.

7  **CONFUSION AND EFFORT TO MITIGATE**

8      22.    As a result of Dexcom's marketing blitz in support of the first over-the-
9  counter glucose monitoring system for people with pre-diabetes, Stelo is informed
10 and believes, and on that basis allege, that the market immediately associated Stelo
11 with the maker of the software and sensor system that allowed consumers to monitor
12 their glucose from their phones.  Simply, Dexcom, the junior user of the Stelo mark,
13 overwhelmed and vitiated any goodwill Stelo had as the senior user of the mark.
14 Calls to Stelo's support lines went from less than ten in June of 2024 to more than
15 300 by September with virtually all relating to concerns customers had with respect
16 to their glucose monitoring system, many of which relate connectivity issues of the
17 sort that Stelo's software solutions are designed to solve.  The hundreds of support
18 calls Stelo continues to receive monthly concerning the Dexcom over-the-counter
19 glucose monitoring system are compelling evidence of relevant post-sale reverse
20 confusion that is having a devastating impact on any continued brand identification
21 of the mark with Stelo independent of an association with Dexcom.  Moreover, the
22 volume of this confusion has buried critical concerns of Stelo's own customers,
23 undermining Stelo stellar support reputation and putting customer critical systems at
24 risk.

25     23.    Noting the initial wave of confusion, counsel for Dexcom and Stelo
26 spoke and brainstormed on ways this confusion might be mitigated, while also hoping
27 that the confusion would diminish after the initial wave of interest in Dexcom new
28 product waned.  Stelo is informed and believes, and on that basis alleges, that

Dexcom began to refer to its product as Stelo by Dexcom and Stelo began including on its website explicit references that it was unaffiliated with Dexcom. In the eleven months since launch, however, Stelo has received more than 3000 inquiries from Dexcom customers believing that they are speaking with the maker of their over-the-counter glucose monitor or an affiliate of that entity. Simply, the cooperative efforts by Stelo and Dexcom to coexist with the use of the mark have not mitigated the ongoing confusion.

24. It is not uncommon for companies in distinct industries to identify themselves or their products with similar names, nor is it uncommon for inquiries to occasionally be misdirected to similarly named entities. Greater caution, and less tolerance, however, is warranted when a product at issue is one critical to human health as opposed to a widget for work or pleasure. Among the more than 3000 inquiries Stelo has received from purchasers Dexcom product, and in addition to the inquire mentioned above about a spouse concerned that a needle may remain in his wife arm, Stelo has received the following:

- 3/14/2025 – "I am calling for support with the Stelo CDM monitor. I inserted a new monitor and have tried to troubleshoot myself, but it will not connect. The app will not connect to the sensor, and I have more details to give over the phone once a human can reach me and talk to me about it."
- 3/24/2025 – "I'm calling about a sensor that's connected and then disconnected within 24 hours. I did try to get help on the AI bot, but it was not successful, and I do need a replacement sensor sent as soon as possible because I do not have another sensor and I'm about to run out in a couple of days and I'm also travelling. So, if you could please give me a call back today."
- 3/25/2025 – "Hey this is already frustrating that nobody answers the phone. We need to know if you have a – if you use a receiver with yours

because the cell phone is not going to work…. Since you're a division of Dexcom I don't see why you don't answer the phone, and we have to leave a message."

- 3/28/2025 – "Good afternoon, I was directed to this number by Dexcom Technical Support. I am needing help with a Stelo device."
- 4/2/2025 – "I'm actually calling regarding my Dexcom Stelo order. This was the number I was given by Dexcom themselves. Supposedly -- I've seen my credit card was charged on March 23rd, which now we're pushing 2 weeks, and I've still not received my sensors."
- 4/15/2025 – "I have a Stelo, just a brand new one that I tried to put on yesterday, something was wrong with it. The needle apparently grabbed the senor wire so instead of inserting it into my arm, it actually pulled out of the back of the Stelo, and customer service from Dexcom gave me your number so I'm calling you to see what we can do about getting that replaced."
- 4/30/2025 – "I put on a new sensor this morning and during warm up it stopped and said, "replace sensor." Number one, I don't have a replacement sensor, they are supposed to be shipped, and I haven't received them yet. Number two, when I filled out the form with Stelo, but it did not ask me for the serial number, so I need somebody to give me a call back."
- 3/30/2025 – "I am using Stelo sensor, and I would like to access my data for a better understanding of the trends. I have been using SQL Servers for decades and this will be useful to visualize my data better using other Microsoft products. I need to install the ODBC driver. Where can I find it?

///
///

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement Section 32 of Lanham Act

### (15 U.S.C. § 1114)

25. Stelo hereby restates and incorporates Paragraphs 1-24 above.

26. Stelo owns all rights title and interest in '605 Registration for the Stelo mark.

27. Dexcom has and continues to knowingly, willfully, and improperly infringe the '605 Registration in interstate commerce through its marketing, advertising, promotion, sale, and distribution of its Stelo glucose monitoring system.

28. Dexcom use in interstate commerce of the Stelo mark is likely to cause confusion or deception of consumers as to the source, origin, or sponsorship of the products it sells under that name as well as the products sold by Stelo. Such confusion is direct – consumers confusing Dexcom Stelo glucose monitoring system as affiliated with Stelo – reverse – consumers confusing Stelo as affiliated with Dexcom and/or its glucose monitoring system – initial interest – potential consumers are drawn to Stelo or Dexcom due to their affiliation of the name with the other – at the point of sale – consumers purchase software from Stelo or a glucose monitoring system from Dexcom – or post-sale – customers or potential customers are confusing drawn to the other entity, which in the case of Stelo undermines the distinctiveness in the identification of the name with Stelo and undermines the goodwill Stelo has built in the name as Dexcom customers have negative experiences with the monitoring system sold by Dexcom.

29. Dexcom conduct constitutes trademark infringement in volition of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

30. As a direct and proximate result of Dexcom's conduct, Stelo has suffered and is, and will continue to, suffer substantial injury to its business, including incurring increased costs and harm to its goodwill, reputation, and the loss of revenues and profits in an amount to be proven at trial but which is believed to be

more than $5 million.

31. Stelo lacks an adequate remedy at law, and, unless preliminarily and finally enjoined by this Court, Dexcom will continue to engage in such acts of trademark infringement to the irreparable damage and injury of Stelo.

32. Stelo is informed and believes, and on that basis alleges, that Dexcom has engaged in, and continues to engage in, this misconduct with full knowledge of Stelo's rights in the Stelo mark and willfully knew, or acted with reckless disregard, that its use of the Stelo mark to identify its glucose monitoring system would cause meaningful direct or reverse confusion in the marketplace and among relevant consumers to the detriment of Stelo. This case is exceptional and warrants an award of an enhanced monetary remedy to compensate Stelo as well as reimbursement of the attorney's fee Stelo has and will incur in bringing and maintaining this action.

## SECOND CLAIM FOR RELIEF

## California Statutory Trademark Infringement

## (California Bus. & Pro. Code § 14245)

33. Stelo hereby restates and incorporates Paragraphs 1-32 above.

34. Stelo is the owner of the Stelo mark and has continuously used the distinctive mark in the State of California to identify itself and its product to customers since 2022 such that the market and its customer have come to identify the mark with Stelo and Stelo has acquired substantial goodwill in the mark.

35. Dexcom has, and continues, to knowingly, willfully, and improperly use the Stelo mark in the State of California in a manner likely to cause confusion in the marketplace and among consumers of Dexcom's and/or Stelo's products.

36. Dexcom use in California of the Stelo mark is likely to cause confusion or deception of consumers as to the source, origin, or sponsorship of the products it sells under that name as well as the products sold by Stelo. Such confusion is direct – consumers confusing Dexcom Stelo glucose monitoring system as affiliated with Stelo – reverse – consumers confusing Stelo as affiliated with Dexcom and/or its

glucose monitoring system – initial interest – potential consumers are drawn to Stelo or Dexcom due to their affiliation of the name with the other – at the point of sale – consumers purchase software from Stelo or a glucose monitoring system from Dexcom – or post-sale – customers or potential customers are confusing drawn to the other entity, which in the case of Stelo undermines the distinctiveness in the identification of the name with Stelo and undermines the goodwill Stelo has built in the name as Dexcom customers have negative experiences with the monitoring system sold by Dexcom.

37. Dexcom conduct constitutes trademark infringement in volition of California's Model State Trademark law, and, in particular, California Business and Professions Code § 13245.

38. As a direct and proximate result of Dexcom's conduct, Stelo has suffered and is, and will continue to, suffer substantial injury to its business, including incurring increased costs and harm to its goodwill, reputation, and the loss of revenues and profits in an amount to be proven at trial but which is believed to be more than $20 million.

39. Stelo lacks an adequate remedy at law, and, unless preliminarily and finally enjoined by this Court, Dexcom will continue to engage in such acts of trademark infringement to the irreparable damage and injury of Stelo.

40. Stelo is informed and believes, and on that basis alleges, that Dexcom has engaged in, and continues to engage in, this misconduct with full knowledge of Stelo's rights in the Stelo mark and willfully knew, or acted with reckless disregard, that its use of the Stelo mark to identify its glucose monitoring system would cause meaningful direct or reverse confusion in the marketplace and among relevant consumers to the detriment of Stelo. Dexcom's wrongful act were done maliciously, oppressively and with an intent to defraud. Stelo is therefore entitled to an award of punitive damages in an amount to be proved at trial.

///

**THIRD CLAIM FOR RELIEF**

**Common Law Trademark Infringement**

41. Stelo hereby restates and incorporates Paragraphs 1-40 above.

42. Stelo is the owner of the Stelo mark and has continuously used the distinctive mark in the State of California to identify itself and its product to customers since 2022 such that the market and its customer have come to identify the mark with Stelo and Stelo has acquired substantial goodwill in the mark.

43. Dexcom has, and continues, to knowingly, willfully, and improperly use the Stelo mark in the State of California in a manner likely to cause confusion in the marketplace and among consumers of Dexcom's and/or Stelo's products.

44. Dexcom use in California of the Stelo mark is likely to cause confusion or deception of consumers as to the source, origin, or sponsorship of the products it sells under that name as well as the products sold by Stelo. Such confusion is direct – consumers confusing Dexcom Stelo glucose monitoring system as affiliated with Stelo – reverse – consumers confusing Stelo as affiliated with Dexcom and/or its glucose monitoring system – initial interest – potential consumers are drawn to Stelo or Dexcom due to their affiliation of the name with the other – at the point of sale – consumers purchase software from Stelo or a glucose monitoring system from Dexcom – or post-sale – customers or potential customers are confusing drawn to the other entity, which in the case of Stelo undermines the distinctiveness in the identification of the name with Stelo and undermines the goodwill Stelo has built in the name as Dexcom customers have negative experiences with the monitoring system sold by Dexcom.

45. Dexcom conduct constitutes trademark infringement in volition of California common law.

46. As a direct and proximate result of Dexcom's conduct, Stelo has suffered and is, and will continue to, suffer substantial injury to its business, including incurring increased costs and harm to its goodwill, reputation, and the loss of

revenues and profits in an amount to be proven at trial but which is believed to be more than $5 million.

47. Stelo lacks an adequate remedy at law, and, unless preliminarily and finally enjoined by this Court, Dexcom will continue to engage in such acts of trademark infringement to the irreparable damage and injury of Stelo.

48. Stelo is informed and believes, and on that basis alleges, that Dexcom has engaged in, and continues to engage in, this misconduct with full knowledge of Stelo's rights in the Stelo mark and willfully knew, or acted with reckless disregard, that its use of the Stelo mark to identify its glucose monitoring system would cause meaningful direct or reverse confusion in the marketplace and among relevant consumers to the detriment of Stelo. Dexcom's wrongful act were done maliciously, oppressively and with an intent to defraud. Stelo is therefore entitled to an award of punitive damages in an amount to be proved at trial.

## FOURTH CLAIM FOR RELIEF

### Negligence

49. Stelo hereby restates and incorporates Paragraphs 1-48 above.

50. Dexcom was negligent and failed to exercise reasonable care in the circumstances by, among other things: (1) adopting the Stelo name despite the existence of the '605 Registration; (2) proceeding with launch of its over-the-counter continuous glucose monitoring system under the name Stelo after receiving from the USPTO an office action refusing to register Dexcom's use of such mark in International Class 9; (2) failing to take appropriate action after learning that customers who had purchase Dexcom's over-the-counter continuous glucose monitoring system were contacting Stelo for support and/or with questions about the system; (3) directing customers with questions about Dexcom's over-the-counter continuous glucose monitoring system to call Stelo support; (4) failing to take adequate measures to ensure that adverse incidence occurring with Dexcom's over-the-counter continuous glucose monitoring system were collected and properly

reported; (5) failing to implement a competent customer support system commensurate with needs and resist associated with medical devices; and (6) giving out Stelo's customer support number to Dexcom customers.

51. Stelo has been harmed by Dexcom's negligence.

52. Dexcom's negligence was a substantial factor in causing Stelo harm.

53. As a proximate result of this harm, Stelo has suffered lost sales, increased costs, a loss of goodwill, a loss of control in its mark and harm to its reputation in the marketplace in an amount to be proven at trial but which is believed to be more than $5 million.

## FIFTH CLAIM FOR RELIEF

## Unfair Competition

## (California Bus. & Pro. Code § 17200)

54. Stelo hereby restates and incorporates Paragraphs 1-53 above.

55. Dexcom's conduct constitute unfair, unlawful, and fraudulent business practices within the meaning of California Business and Professions Code § 17200, as more particularly described above.

56. As a direct and proximate result of Dexcom's conduct, Stelo has suffered and is, and will continue to, suffer substantial injury to its business, including incurring increased costs and harm to its goodwill, reputation, and the loss of revenues and profits.

57. Stelo lacks an adequate remedy at law, and, unless preliminarily and finally enjoined by this Court, Dexcom will continue to engage in such acts of unfair completion to the irreparable damage and injury of Stelo.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Stelo prays for judgment against Dexcom and Does 1 through 10, inclusive, and as to each of them as follows:

A. For temporary, preliminary, and permanent injunctive relief from this Court prohibiting Dexcom from engaging in infringing, unlawful, unfair, or

fraudulent business practices described herein, including, without limitation, the marketing, promotion, distribution, advertising, and sale of over-the-counter continuous glucose monitoring systems under the name Stelo or to sell market or promote any other products under the Stelo name;

  B. For an award of damages in an amount to be proven at trial but is believed to exceed $5 million and for such an award to be enhanced to adequately compensate Stelo;

  C. For an award of damages sufficient to compensate Stelo for the advertising or other expenses necessary to dispel any confusion caused by Dexcom's trademark infringement or negligent conduct, including, but limited to the cost of an appropriate corrective advertising campaign;

  D. For an accounting and disgorgement of Dexcom's profits from the sale of products under the Stelo name as unjust enrichment because Dexcom acted with sufficient mens rea, including without limitation the willful disregard of Stelo's rights;

  E. For a finding that this case is exceptional and for an award of the reasonable attorney's fee incurred by Stelo in bringing and prosecuting this action.

  F. For a finding that Dexcom acted with fraud, malice, and/or oppression sufficient to award Stelo punitive damages and for an award of punitive damages in an amount to be proven at trial;

  G. For all costs of suit; and

  H. For such other and further relief as this Court may deem just and equitable.

Dated: June 16, 2025  **FOX ROTHSCHILD LLP**

           */s/ John J. Shaeffer*
           John J. Shaeffer
           Meeghan H. Tirtasaputra
           Attorneys for Plaintiff StarQuest Ventures, Inc.

# JURY DEMAND

Stelo hereby request and demands a trial by jury on all claims so triable.

Dated: June 16, 2025

**FOX ROTHSCHILD LLP**

*/s/ John J. Shaeffer*
John J. Shaeffer
Meeghan H. Tirtasaputra
Attorneys for Plaintiff StarQuest Ventures, Inc.

**COMPLAINT**